No. 25-10196

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

JENNIFER THOMPSON,
*Plaintiff-Appellant,*

v.

ACY MCGEHEE, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS MAYOR OF THE CITY OF GODLEY; CITY OF GODLEY, TEXAS; MATTHEW CANTRELL, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS INTERIM POLICE CHIEF OF THE GODLEY POLICE DEPARTMENT; JEREMY ARBUTHNOT, BADGE #980; SPENCER TEMPLER, BADGE #985,
*Defendants-Appellees.*

---

On Appeal from the United States District Court for the
Northern District of Texas, Dallas Division
Civil Action No. 3:23-CV-1441-N

---

## REPLY BRIEF OF
## APPELLANT JENNIFER THOMPSON

---

CARTER ARNETT PLLC
8150 N. Central Expressway
Suite 500
Dallas, Texas 75206
Telephone: (214) 550-8188
Fax: (214) 550-8185

Ann "Ana" Marie Jordan
State Bar No. 00790748
ajordan@carterarnett.com
Linda R. Stahl
State Bar No.00798525
lstahl@carterarnett.com

## TABLE OF CONTENTS

SUMMARY OF REPLY ..............................................................2

REPLY ...................................................................................4

    I.    The City's attempts to dodge responsibility for the Mayor's and Police Chief's unconstitutional acts fail............4

        A.    The City ignores allegations that the Mayor and Police Chief are responsible policymakers ...................5

        B.    Thompson's allegations are not conclusory ...................8

        C.    A pattern of violations is unnecessary to show deliberate indifference under these facts ...................11

        D.    The City mischaracterizes the failure to train and supervise claims...........................................................15

    II.    Probable cause is absent and even if it exists, it does not defeat the retaliatory arrest claims.....................................18

        A.    Probable cause is plausibly absent.............................18

        B.    Probable cause is not dispositive under *Lozman* and *Nieves* exception............................................19

    III.    A *Franks* claim is plausibly pled .........................................25

    IV.    Procedural due process claims are viable in this circuit ...............................................................................26

    V.    Qualified immunity is unavailable at the pleading stage on these facts.............................................................30

    VI.    The City strategically used *Carswell*...................................32

    VII.    Appellees' objections and waiver arguments should be overruled and rejected ..........................................33

    CONCLUSION.................................................................37

# TABLE OF AUTHORITIES

*Ashcroft v Iqbal,*
    556 U.S.662 (2009) ............................................................15

*Bd. of Cnty Comm's of Bryan Cnty, Okl. v. Brown,*
    520 U.S. 397 (1997) ...........................................................13

*Brown v. Callahan,*
    623 F.3d 249 (5th Cir. 2010)................................................12

*Burge v. St. Tammany Par.,*
    336 F.3d 363 (5th Cir. 2003)................................................12

*City of Oklahoma City v. Tuttle,*
    471 U.S. 808 (1985) ...........................................................14

*Cole v. Carson,*
    802 F.3d 752 (5th Cir.2015) ...............................................29

*Espinal v. City of Houston,*
    96 F.4th 741 (5th Cir. 2024)................................................28

*Familias Unidas v. Briscoe,*
    619 F.2d 391 (5th Cir. 1980)..................................................5

*Gonzalez v. Castle Hills,* No. 5:20-cv-01151,
    2021 WL 4046758 (W.D. Tex., Mar. 12, 2021) ....................23

*Gonzalez v. Trevino,*
    42 F.4th 487 (5th Cir. 2022)................................................23

*Gonzalez v. Trevino,*
    602 U.S. 653 (2024) ...............................................22, 23, 24

*Hughes v. Garcia,*
    100 F.4th 611 (5th Cir. 2024) .............................................36

*Lozman v. City of Rivera Beach,*
    585 U.S. 87 (2018) ......................................................Passim

*Monell v. Dept of Soc. Servs. of City of New York,*
   436 U.S. 658 (1978) ....................................................................Passim

*Moore v. City of Dallas,* No. 23-10566,
   2024 WL913368 (5th Cir. 2024) .......................................................28

*Morgan v. Chapman,*
   969 F.3d 238 (5th Cir. 2020) ..................................................... 28, 29

*Morgan v. Chapman,*
   No. 6:17-cv-00004 (S.D. Tex., Nov. 8, 2017) .....................................29

*Nieves v. Bartlett,*
   587 U.S. 391 (2019) ....................................................................Passim

*Peña v. City of Rio Grande City,*
   879 F.3d 613 (5th Cir. 2018).............................................................16

*Piotrowski v. City of Houston,*
   237 F.3d 567 (5th Cir.2001) ......................................................13, 14

*Snyder v. Trepagnier,*
   142 F.3d 791 (5th Cir. 1998).............................................................12

*Thompson v. Clark,*
   596 U.S. 36 (2022 ...........................................................................27

*Zarnow v. City of Wichita Falls, Tex.,*
   614 F.3d 161 (5th Cir. 2010)..........................................................6, 14

## Other Authorities

42 U.S.C. §1983......................................................................................29

Fed. R. Civ. Proc. 12(b)(6) ...............................................................11, 37

Tex. Local Gov't Code §22.042(d)............................................................6

Tex. Local Gov't Code §22.042(e) ............................................................6

## SUMMARY OF REPLY

Appellees cling to the notion that Thompson's complaint rises or falls on probable cause. It does not. Thompson has not alleged a "contempt of cop" retaliatory arrest case involving a split-second arrest of a stranger at a riot or bar. Rather, as in *Lozman* and *Gonzalez,* in which the Supreme Court determined the existence of probable cause was not dispositive, Thompson alleges that after publicly sparring with the Mayor and opposing the Interim Police Chief's appointment, she was subjected to a pretextual arrest in retaliation for her past speech. And that the arrest was timed minutes before a city council meeting to prevent her from voting against the Mayor's appointees.

Appellees also repeat their false mantra that Thompson somehow admitted to violating the tampering statute. She did not. Thompson admits to editing a personal *copy,* not the *original* official agenda that remained posted unaltered at City Hall and which--as a matter of law-- was the only document that qualifies as a "government document" for purposes of the tampering statute. Thompson also alleges that the *district* attorney told the officers Thompson was innocent, which

undermines their bare assertion that they reasonably believed she committed a crime. Because she was innocent and the arrest pretextual, Appellees had to manufacture probable cause by manipulating evidence to obscure her innocence.

To achieve this objective, Appellees presented false and misleading evidence to the *county* attorney and the magistrate judge who were *misled i*nto approving a probable cause affidavit and arrest warrant for a nonviolent *misdemeanor,* which Appellees typically declined to pursue. The allegation that the these independent intermediaries were misled is supported in part by the fact that within 72 hours of Thompson's arrest, the *same county* attorney who approved the probable cause affidavit refused to prosecute the criminal case.

Moreover, Thompson demonstrates with objective evidence, a 2019-2023 survey of arrests and the Department's General Orders, that Godley police typically declined to arrest for such offenses, much less seek arrest warrants for them. Police policy instructed officers to obtain arrest warrants only for felonies, to seek *district* attorney guidance, and to arrest without a warrant only for misdemeanors involving threats to

safety or property. When pursuing and executing the warrant in this case, police violated federal law and numerous internal policies to ensure Thompson could not cast her opposition votes.

Consequently, this retaliatory arrest case is *not* controlled by the general rule requiring the absence of probable cause (though Thompson can show probable cause was absent). It is controlled by *Lozman* and the exception articulated in *Nieves* and clarified in *Gonzalez*. Thompson's claims turn not on her conduct, but on motive and opportunity to use that conduct as a pretext to arrest her in retaliation for her political speech, and to prevent her from casting opposition votes.

Appellees ignore these allegations and mischaracterize others to build and tear down strawman arguments. But, as demonstrated below, their strategy of misdirection fails.

## REPLY

## I.    The City's attempts to dodge responsibility for the Mayor's and Police Chief's unconstitutional acts fail.

The City argues Thompson's complaint fails to plausibly show *Monell* liability at the pleading stage. In support, it asserts (a) the City is not liable for employee conduct and no facts show policymakers were

responsible for the constitutional deprivations, City Brief p.11-14, (b) Thompson's claims arise from a single incident and therefore cannot meet the policy or custom element, *id.* p.15-16, (c) the complaint fails to show deliberate indifference, *id.* p.20; and (d) the failure to train/supervise claim is "meritless." *Id.* p.19. The City is wrong on all counts.

**A.    The City ignores allegations that the Mayor and Police Chief are responsible policymakers.**

Like the district court, the City ignores Thompson's allegations and arguments establishing that the Mayor and Police Chief are municipal policymakers and they were both personally involved in the events leading to her constitutional deprivations. Although the City "disputes" that the Mayor and the Interim Police Chief are policymakers, it otherwise fails to cite to the record or authority showing they are not. City Brief p.22, fn.15. And with no support whatsoever, the City asserts that the only policymaker is the City Council. *Id.*

The City seemingly argues that the Mayor and Police Chief are *employees* subject to the *respondeat superior* exception to *Monell* liability. City Brief p.8,11. But it cites no authority for that proposition. And this Court has held that elected officials are policymakers for purposes of

5

*Monell. See, e.g., Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980) (holding elected Sheriff's "official conduct and decisions must necessarily be considered those of one 'whose edicts or acts may fairly be said to represent official policy'" which gives rise to *Monell* liability) (quoting *Monell v. Dept of Soc. Servs. of City of New York,* 436 U.S. 658, 694 (1978)). Here, the Mayor is an elected city official who by virtue of his position is vested by the State of Texas with the power to direct city police to "prosecute," "punish," and "arrest" on behalf of the municipality. Tex. Local Gov't Code §22.042(d) and (e).

This Court has also held that Police Chiefs are policymakers when Department General Orders make them the sole official responsible for internal police policy. *See Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 168 (5th Cir. 2010) (relying on General Orders to hold "the chief of police is the sole official responsible for internal police policy" and therefore a *Monell* policymaker). Here, the Godley Police Department's General Orders made the Police Chief the sole official responsible for internal police policy. *See* (ROA.475[II(A)]"Department Policy is determined by the Chief of Police.").

6

When Thompson's allegations regarding the responsible policymakers are accepted as true, concluding that her complaint plausibly states a *Monell* claim is not difficult. Indeed, if Thompson proves her arrest was substantially motivated by the Mayor's retaliatory animus for her political speech and to prevent her from speaking and casting votes, there can be no question that such "edicts or acts" are facially unconstitutional and may be said to represent official policy. So too does the Interim Chief's knowing implementation of the Mayor's unconstitutional directive manifested by personal participation in events leading to Thompson's constitutional deprivations.

These include, but are not limited to the Police Chief's knowing continuation of a retaliatory custom that began under his predecessor; knowingly permitting officers, including himself, to investigate a suspect who had accused them of First Amendment retaliation; approving the procurement and execution of an arrest warrant for a nonviolent misdemeanor under circumstances in which no probable cause existed and Department policy instructed against it; permitting submission of falsified and manipulated evidence to the county attorney and magistrate

judge; and failing to supervise or train seasoned or novice officers about First Amendment limitations. All of these alleged edicts and actions flow directly from the Mayor's and Police Chief's policymaking and supervisory authority and personal involvement, and therefor form the moving force behind Thompson's constitutional deprivations.

### B.    Thompson's allegations are not conclusory.

The most that the City says about allegations against the Mayor is that they are "conclusory." City Brief p.15. However, this is false. Thompson's brief points to objective facts from which reasonable inferences can be drawn that plausibly show the Mayor made the decision to prosecute and arrest Thompson in the first instance, and that his decisions were substantially motivated by retaliatory animus and to prevent Thompson's speaking and voting at a council meeting. Indeed, the notion that these officers in this small town would persist in their objective to arrest a sitting city councilmember *without* the Mayor's knowledge and direct involvement is highly *implausible*.

For example, Thompson alleges after Police Chief Jordan's whistleblower allegations regarding the existence of a retaliatory custom,

the Mayor and Thompson publicly and privately clashed for several months over what the City should do in response to Jordan's allegations and other matters. Thompson favored transparency, while the Mayor and his allies did not. ROA.822[¶28-38, 47-61, 63-64, 70-74, 83-85].

Even though the Mayor was aware of Thompson's intent to give notice of matters of public concern on which she intended to speak, he nevertheless directed the Secretary not to post Thompson's agenda items in violation of TOMA. ROA.831-32[¶64,68], 834 [¶73-74]. When those agenda items were nevertheless mistakenly released to the public by *Papenfuss,* the Mayor rushed to secretly initiate a criminal complaint against *Thompson* with knowledge that it would be investigated by the same individuals who he knew Thompson had recently reported threatened her with retaliation. ROA.828[¶55], 837[¶83-85], 841[¶96]. And rather than initiate an available legislative process to investigate the facts surrounding the release of the corrected agenda, the Mayor directed police to pursue a warrant for *Thompson's* arrest even though it was *Papenfuss* who publicly released it, and the district attorney proclaimed her innocent. ROA.837[¶83], 839[¶90-91].

Thompson's allegations further detail the Mayor's motive and opportunity to use the release of the corrected agenda as an excuse to arrest her before the critical meeting. These allegations show her momentum before her arrest in passing agenda items that the Mayor was against and blocking items he was in favor, and that the Mayor was aware Thompson, Papenfuss, and Cornelison intended to vote against his political appointees at a council meeting. ROA.851[¶135-38], 852[¶140-42]. State law provides that tie votes would allow the Mayor to vote and pass his agenda, which is the exact circumstance created by Thompson's arrest. 859[¶165]

Finally, following Thompson's highly publicized arrest, the Interim Police Chief admitted to members of a newly elected city council, of which Thompson was no longer a member, that he was directed to "get it done" from which the only inference that can be drawn is that the *Mayor* was directing the chief's actions. ROA.862[¶173] And during a videotaped council meeting in which the Mayor was present, Papenfuss publicly accused the Mayor of directing Thompson's arrest to prevent her speaking and voting at the critical meeting. (ROA.861[¶172].), Thompson

Brief p. 59-60. In the face of this direct accusation, the Mayor sat silent, which is a fact from which his admission can be inferred. The City ignores these alleged facts and does not treat them as true.

### C.   A pattern of violations is unnecessary to show deliberate indifference under these facts.

The City argues Thompson's allegations fail to show deliberate indifference. City Brief p.20. However, the City's analysis of this element is flawed because it refuses to accept as true any of Thompson's factual allegations, including that policymakers themselves knowingly participated in the events leading to her constitutional deprivations and that her arrest was pretextual and made with retaliatory animus. Instead, the City assumes, contrary to the complaint and standard of review, that neither the Mayor nor the Interim Police Chief were involved, that her arrest was made without retaliatory animus, and that it was a routine arrest planned only by subordinate officers. As demonstrated below, when Thompson's complaint is analyzed under the correct 12(b)(6) standard, deliberate indifference is shown.

The City begins its analysis setting forth the incorrect standard in the context of Thompson's allegations:

> If a municipal policy is *not facially unconstitutional*, a plaintiff must establish that the municipality promulgated its official policy with deliberate indifference. . . [which] is a stringent standard of fault which generally *requires a plaintiff to show a pattern of violations*. . ."

City Brief p.12. In support of its assertion, the City relies on *summary judgment* cases and *post-trial* cases in which a full opportunity for discovery including depositions was permitted.  City Brief p.12-13.

These cases are distinguishable because they turn on the absence of evidence demonstrating the official was present or had personal knowledge of the unconstitutional policy or act that caused the constitutional deprivation. *See, e.g., Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (reversing denial of summary judgment as to claim against Sheriff because he "had no knowledge of and did not participate in the events surrounding Brown's fatal period of detention"); *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003) (reversing jury verdict because evidence insufficient to show *Brady* violation was caused by Sheriff's "*facially innocuous*" records-keeping practices); *Snyder v. Trepagnier*, 142 F.3d 791 (5th Cir. 1998) (reversing jury verdict because evidence insufficient to show police shooting was caused by the

department's negligent police hiring, enforcement of code of silence that fostered attitude of police violence, failure to train on stress management).

But more importantly, these cases each relied on *Board of County Commissioner of Bryan County, Oklahoma. v. Brown*, in which the Supreme Court recognized that the standard of proof required to show deliberate indifference will differ depending on the plaintiff's allegations. "Where a plaintiff claims that a particular municipal action *itself* violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward." *Bd. of Cnty Comm's of Bryan Cnty, Okl. v. Brown,* 520 U.S. 397, 404 (1997). In the face of such allegations, deliberate indifference is imputed to the municipality because "it necessarily follows that a policymaker was not only aware of the specific policy, but was also aware that a constitutional violation will most likely occur." *Piotrowski v. City of Hous.,* 237 F.3d 567, 579 (5th Cir.2001). If on the other hand, a plaintiff alleges a policymaker made "a single *facially lawful*" decision, which in *Brown* was a hiring decision, the standard of

proof for deliberate difference is much more stringent. *Id.*, 520 U.S. 397, 398 (1997) (emphasis added).

Here, Thompson's allegations fall into the former category. She alleges the Mayor—a final policymaker responsible for law enforcement for the City of Godley—made the decision with retaliatory animus to arrest her and with intent to prevent her from speaking and casting votes at a council meeting. If true, this is *facially unconstitutional* conduct by a final policymaker, which means deliberate indifference is imputed to the City, and a pattern of violations by individual subordinate police officers is *not* required. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) ("A pattern of conduct is necessary only where the municipal actors are *not* policymakers"); *Piotrowski,* 237 F.3d at 579; *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24 (1985) (a single incident of unconstitutional activity is sufficient to impose liability under *Monell* if the plaintiff alleges and proves "it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."). The same holds true for the allegations against the Police Chief, who Thompson alleges permitted retaliatory use of his

officers which was a custom that was knowingly continued by the Interim Chief. On these facts, nothing more is required at the pleading stage.

**D. The City mischaracterizes the failure to train and supervise claims.**

In the district court, the City maintained that the relevant policymaker for Thompson's claims was the City Council. Consequently, when the City challenged the failure to train claim, it argued it failed because Thompson had not alleged facts establishing the City Council was deliberately indifferent. ROA.922. The City also argued that the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) had "foreclosed" failure to supervise claims. ROA.923.

In her district court response, Thompson argued deliberate indifference was shown. ROA.1015-16. She pointed to facts establishing that the whistleblower Police Chief Jason Jordan *confessed* to the existence of a retaliatory custom, and that the Mayor, members of City Council, and interim police chief were themselves participating in it. ROA.1012-17. Thompson further alleged that because of the official use of the retaliatory custom, police policy deliberately omitted from the Department General Orders and City Handbook all training on First

Amendment limitations to police power. ROA.1017. And when Cantrell was elevated from Sergeant to Interim Chief following Jordan's departure, Thompson alleges Cantrell himself continued and participated in the unconstitutional retaliatory custom by threatening her with retaliation after she spoke out, and, at the Mayor's direction, authorized subordinate officers to violate existing policy and federal law to facilitate her arrest and prevent her presence at the council meeting. And with knowledge of the existence of a retaliatory custom that began under his predecessor, he failed to train or supervise subordinate and novice officers on First Amendment protections.

Thus, while Thompson alleged a custom of retaliation existed, she argued that even if her failure to train/supervise claims were based on a single incident, a plausible claim was stated because the policymakers themselves were participating in the retaliatory conduct and novice officers were not provided with any training on First Amendment limitations whatsoever. *See Peña v. City of Rio Grande City,* 879 F.3d 613, 624 (5th Cir. 2018) (the single incident exception "is generally

reserved for those cases in which the government actor was provided no training whatsoever").

On appeal, the City does not repeat its arguments made in the district court, but relies on a single erroneous sentence in the district's court's opinion stating that Thompson "merely alleges that the officer was 'young' and 'inexperienced' and 'inadequately trained on the limits of his authority as established by the First Amendment.'" City Brief p.21. But, as demonstrated above, this mischaracterizes her allegations. Moreover, the district court's refusal to accept as true Thompson's allegation that the Police Chief was the relevant policymaker with respect to the Department policies because the General Orders made him so, caused the district court to engage in a flawed analysis of this claim and the others.

## II.    Probable cause is absent and even if it exists, it does not defeat the retaliatory arrest claims.

Appellees also argue Thompson alleges facts demonstrating probable cause existed and its existence absolves them of liability for all claims. City Brief pp.16-19, 21-24; Ind. Brief pp.12-17. Appellees reach

this conclusion by improperly mischaracterizing and omitting critical factual allegations and removing context.

## A.  Probable cause is plausibly absent.

Without addressing Thompson's factual allegations and legal argument establishing that the elements of the tampering charge were unmet as a matter of law, the City asserts in a footnote that Thompson "admits that she 'knowingly' altered a *government document* because she wanted the document to say something different." City Brief p.23, n.16 (emphasis added). The individual defendants echo this assertion. *See* Ind. Br. p.7, ¶4.[1] But these assertions are false. Thompson's allegations show, and her arguments make clear, that the "document" she admits she altered was her *personal copy*, not the *original official* government document that the officers knew at all times remained posted *untouched* in front of City Hall. And the original official document is the only

---

[1] Indeed, the only fact that Thompson concedes in the list of eight "undisputed" facts offered by the individual defendants is ¶2. Ind. Brief p.7-8. The others all incorrectly assume that: (1) Thompson altered the "*official* agenda," (3) the deadline to post the agenda items was a date other than the TOMA deadline,(4) Thompson's "altered *copy*" could be considered the "official agenda" before it was posted in front of City Hall, (5) and (7) the "altered agenda" was the "official agenda," (6) she "used" the seal and "used" the secretary's signature; and (8) Thompson's edited *copy* required "approval" before sharing it with Papenfuss.

document that qualifies as a "government document" for purposes of the tampering statute--a fact these officers came to understand after speaking with the district attorney which is why they changed their original report before approaching the county attorney. Thompson's Brief p.72-77. And after discovering she was misled, the county attorney's opinion about the criminal charge subsequently aligned with that of the district attorney, which is why she rejected the misdemeanor case three days after approving the probable cause affidavit. ROA.848¶126.

### B.    Probable cause is not dispositive under *Lozman* and *Nieves* exception.

Despite near identical facts in this case as in *Lozman* and *Gonzalez,* which hold the existence of probable cause is not dispositive under the circumstances alleged there, the City argues in a single sentence that *Nieves'* general rule requiring an absence of probable cause applies because "[i]f Appellant's theory was correct the Supreme Court would have relied on *Lozman* as opposed to *Nieves* in deciding *Trevino.*" City Brief p.22. But this highlights the City's misunderstanding of these holdings.

In *Lozman,* prior to his warrantless arrest, the plaintiff was critical of the city council during public meetings. *Lozman v. City of Rivera Beach*, 585 U.S. 87, 91 (2018). Following a critical session, in a closed meeting, the city council discussed a plan to "intimidate" him. *Id.* Five months later, while plaintiff was speaking during a public meeting, a councilmember asked him to stop. *Id.* at 92. When he refused, the councilmember directed a police officer to arrest and remove him from the chamber. *Id.* The state's attorney later determined probable cause existed, but dismissed the charges. *Id.* The plaintiff sued the city and later *conceded* the arresting officer had probable cause to arrest. *Id.* at 95. Despite this concession, the Supreme Court held these facts were sufficient to state a retaliatory arrest claim against the municipality itself because the plaintiff had alleged a policymaker, there the city council, had formed a pre-meditated plan to "intimidate" him, and that his arrest was "ordered in retaliation for his earlier, protected speech," which met the *Monell* requirements.  *Id.* at 95-96, 101.

In *Nieves*, the plaintiff was arrested without a warrant during a "raucous winter sports festival" by police officers he had never met before.

20

*Nieves v. Bartlett*, 587 U.S. 391 (2019). At the time of the arrest, the plaintiff was intoxicated and belligerent toward police with some, but not all, events leading to the arrest captured on video. *Id.* at 395-96. After criminal charges were dismissed, the plaintiff sued the police officers-- not the city—claiming they made statements that showed they arrested him in retaliation for criticisms he launched at the officers immediately before his arrest. *Id.* at 396-97. The police denied making the retaliatory statements, and other than the plaintiff's testimony, no evidence corroborated that they did so. The district court granted summary judgment for the individual officers because regardless of whether the officers made the retaliatory statements, video evidence demonstrated probable cause existed to believe at the time of his arrest the plaintiff was a danger to himself or others, which justified taking him into immediate custody.

After recognizing the "causal complexity" presented in situations where officers "must make split-second judgments when deciding whether to arrest," the Supreme Court imposed a general rule in similar retaliatory arrest cases that requires plaintiffs to "plead and prove the

absence of probable cause for the arrest." *Id.* at 401-02. At the same time, however, the Court recognized "a narrow qualification" to the general rule, which is that the existence of probable cause will not defeat a retaliatory arrest claim where "objective evidence" suggests "otherwise similarly situated individuals not engaged in the same sort of protected speech" were not arrested. *Id.* at 406-407. The *Nieves* Court did not cite to or discuss *Monell*.

In *Gonzalez*, a councilmember who had previously and repeatedly publicly clashed with the Mayor, surrendered herself to jail after learning a warrant for tampering with a government record had been issued for her arrest. *Gonzalez v. Trevino*, 602 U.S. 653 (2024). Following dismissal of the charges, the councilmember sued the City of Castle Hills, the Mayor (in both his official and individual capacity), and the police officers who obtained the warrant. While *conceding* the officers had probable cause to arrest, the councilmember alleged the tampering charge was a "sham" concocted by the Mayor to retaliate against her for engaging in First Amendment activity. *Id.* at 657.

Like here, both the city and the individual defendants moved to dismiss on the ground that the plaintiff did not allege and could not show the absence of probable cause. *Gonzalez v. Castle Hills*, No. 5:20-cv-01151, 2021 WL 4046758, at *4, 8 (W.D. Tex., Mar. 12, 2021). In response to the *city's* motion the plaintiff relied on *Lozman*; and in her response to the *individual defendants'* motion, she relied on the exception to the absence-of-probable-cause requirement in *Nieves*. After the district court denied both motions, *only* the individual defendants including the Mayor in his *individual capacity* appealed to this Court based on qualified immunity. *Gonzalez v. Trevino*, 42 F.4th 487, 491-93 (5th Cir. 2022). When the Supreme Court ultimately considered the case, the municipality was not before it.

When considering whether *Gonzalez* fell within the *Nieves'* exception, the Court clarified its *Nieves* language by reinforcing the principle that the exception to the absence of probable cause requirement exists to "account for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Gonzalez,* 602 U.S. at 658 (quoting *Nieves*, 587 U.S. at 406). The Court

explained that "the only express limit we placed on the sort of evidence a plaintiff may present for that purpose is that it must be objective in order to avoid 'the significant problems that would arise from reviewing police conduct under a purely subjective standard." *Gonzalez,* 602 U.S. at 658. The Court then determined that Gonzalez's survey of arrests "is a permissible type of evidence because the fact that no one has ever been arrested for engaging in a certain kind of conduct –especially when the criminal prohibition is longstanding and the conduct at issue is not novel—makes it more likely that an officer has declined to arrest someone for engaging in such conduct in the past." *Id.*

Here, Thompson's complaint alleges facts demonstrating probable cause was absent for her arrest. But even if probable cause did exist, that does not absolve Appellees of liability for her retaliatory arrest under *Lozman* and *Nieves. Nieves's* exception applies to Thompson's retaliatory arrest claim against the individual defendants because Thompson can point to the same type of objective evidence the Supreme Court found sufficient in *Gonzalez* and then some.

### III.  A *Franks* claim is plausibly pled.

In support of its assertion that the independent intermediary doctrine applies, the City once again argues Thompson "admits she altered the agenda containing the City Secretary's signature and the City Seal to add additional items." City Brief p.17. But again, the City ignores context and arguments demonstrating Thompson admits only to altering a personal *copy*, not the original. As for the individual defendants, they primarily argue that Thompson fails to show (1) Arbuthnot *knew* the false statements contained in his affidavit were false, Ind. Brief p.21-22; (2)the false statements were not material or were not materially false, *id.* p.22-24, and (3) "could have been" true. *Id.*, p.23. None of these arguments defeat Thompson's *Franks* allegations at the pleading stage.

First, Thompson alleges facts establishing the Mayor, the Police Chief, Arbuthnot and Templer, knew she was innocent because the district attorney told them so. ROA.838-39 [¶¶88-91]. She also shows that Arbuthnot made statements that suggested Thompson had altered the "original" document instead of a *copy*, and had "forged" a document, when he was aware the "original" document remained posted at all times at

City Hall untouched, and that there was no evidence of intent to deceive. ROA.854-55 [¶148-152], 871-74 [¶209-218], 1003-09, 1030-38.

Second, Thompson's briefing plausibly establishes why specific statements contained within the affidavit are materially false. *See* Thompson Brief pp.72-85; ROA.1003-09, 1030-38. The Individual defendants do not meaningfully address these arguments. Instead, they try to minimize their materiality, rely on the district court's flawed analysis, offer competing self-serving interpretations and explanations, make assumptions in their favor, and claim Thompson's arguments were waived. However, because the record demonstrates these facts and arguments were repeatedly raised in the district court in one form or the other, and Thompson's allegations are required to be accepted as true and all inferences drawn in her favor, their arguments fail.

## IV.    Procedural due process claims are viable in this circuit.

Appellee assert the trial court "recognized" Thompson asserted a procedural due process claim and implicitly dismissed it. Ind. Brief p.33, fn.122. They point to the trial court's general reference to the due process claim in a list of other claims, but that single reference does not

demonstrate the district court correctly analyzed the competing arguments by the parties. This is particularly concerning because the procedural due process violation does not require the absence of probable cause and the individual defendants' arguments raised in the district court and on appeal fail as a matter of law.

The individual defendants argue that the procedural due process claim is not a constitutional violation, but a state tort. Ind. Brief p.32; ROA.951. However, Thompson's complaint references the Fourteenth Amendment's protections against state deprivations of liberty "without due process." ROA.877-78. Although the complaint also references "abuse of process," it does so as the common law analog for purposes of §1983, which is the starting point for all §1983 claims. *See Thompson v. Clark*, 596 U.S. 36, 43 (2022). Consequently, mere reference to the common law analog does not convert an alleged constitutional violation into a state law tort.

Moreover, the individual defendants' reliance on *Morgan v. Chapman*[2] and *Moore v. City of Dallas,*[3] is misplaced. These cases considered factual allegations that pointed *only* to a state-tort claim. In *Morgan*, this Court held that malicious prosecution and abuse of process were both state law torts not constitutional violations. *Id.* at 241. However, after the Supreme Court decided *Clark*, in which the Court pointed to its historical practice of using common-law torts as *analogs* to determine the elements of constitutional claims cognizable under 42 U.S.C. §1983 and recognized that malicious prosecution was the common-law analogue for Fourth Amendment challenges, *Morgan* was overruled. *See Espinal v. City of Houston*, 96 F.4th 741, 748 (5th Cir. 2024) ("We have since acknowledged that the Court's 'clear recognition of the constitutional tort of malicious prosecution' overruled our precedent to the contrary").

Nor did *Morgan* or *Moore* hold that the underlying factual allegations supporting the abuse-of-process claim could not also state a

---

[2] 969 F.3d 238 (5th Cir. 2020).

[3] No. 23-10566, 2024 WL913368 (5th Cir. 2024).

28

denial of procedural due process under the Fourteenth Amendment for purposes of § 1983. Rather, because the complaints in both cases failed to allege that the abuse-of-process arose from a violation of the Fourteenth Amendment,[4] the Court was compelled to conclude the complaints in each case alleged only the state law torts. Despite this omission, however, the *Morgan* Court remanded the case to allow plaintiff to allege the Fourteenth Amendment because amendment would not be futile in light of C*ole v. Carson,* 802 F.3d 752, 771 (5th Cir.2015). *See Morgan* at 247 ("we observe that facts that constitute the state tort of abuse of process can also constitute an unreasonable search, unreasonable seizure, or violation of another right locatable in constitutional text. Such claims, rooted in the violation of constitutional rights, are actionable under § 1983."). Here, because Thompson formally invoked the Fourteenth Amendment's protections, this argument fails.

---

[4] *See, e.g., Morgan v. Chapman*, No. 6:17-cv-00004 (Tex. S.D. Victoria Div. Nov. 8, 2017) (Doc. No. 63, p. 22)).

**V.     Qualified immunity is unavailable on these facts at the pleading stage.**

Appellees assert that the complaint failed to show they "committed an alleged constitutional violation at all; much less that any alleged conduct was objectively unreasonable." Ind. Brief p.35. They are incorrect. Thompson's complaint alleges sufficient facts from which plausible inferences can be drawn that McGehee, acting under color of state law and with retaliatory animus for Thompson's political speech, personally directed Cantrell to arrest Thompson for noncriminal conduct, and to time the arrest to prevent her from casting her votes at a meeting.

Thompson's complaint also alleges Cantrell, acting under color of state law and in a supervisory capacity acted with retaliatory animus for Thompson's opposition to his appointment, knowingly followed McGehee's unlawful directive and personally participated in, and authorized, the manufacture and manipulation of evidence by Arbuthnot to obtain a warrant in violation of federal law and Department policy. Cantrell and/or Arbuthnot authorized and directed Templer to take Thompson into immediate custody to prevent her from casting her votes at the council meeting.

Thompson also alleges that Arbuthnot, under color of state law and with retaliatory animus for Thompson's political speech, and in furtherance of the Mayor's directive and in compliance with Cantrell's instructions, knowingly made false and misleading statements in a probable cause affidavit. He used it to obtain a warrant that would serve as a pretext to arrest to prevent Thompson's attendance at the meeting.

Finally, Thompson alleges Templer, acting under color of state law, and with knowledge that the district attorney had declared Thompson innocent, executed the warrant. Templer did so with knowledge that Thompson was about to enter a city council meeting to exercise her political speech rights and to cast critical votes, but nevertheless immediately executed the arrest warrant to prevent her from attending that meeting to comply with the Mayor's unlawful directive.

These actions were all committed with deliberate indifference in retaliation for Thompson's political speech, and with intent to prevent Thompson's exercise of her political speech, and were therefore objectively unreasonable violations of Thompson's clearly established

rights under the First, Fourth and Fourteenth Amendments as described in her complaint.

## VI. The City strategically used *Carswell* to shield public information from public view.

In response to Thompson's request for clarification of *Carswell* v. *Camp*, 54 F.4th 307 (5th Cir. 2022) the City implies there was no harm caused by its four-month delayed production of unredacted police reports. City Brief p.10. However, the record demonstrates the City repeatedly relied on *Carswell* to justify its withholding and concealment of relevant *public records* which are in the sole custody of the City, and which are otherwise required to be disclosed by the Texas Public Information Act.

This withholding of public information premised on an overly broad reading of *Carswell* repeatedly undermined Thompson's ability to investigate and draft her complaint. ROA.207-09, 650-59, 887-95, 961-69, 1095-99, 1163-71. While the City eventually turned over the unredacted police reports, it did so only after moving to dismiss and under threat of a motion to compel. Even after it finally turned over the police reports, however, the City did not produce the "good to go" email from the county attorney until *after* Thompson's counsel had acquired it from a Dallas

Morning News journalist. The journalist received it from counsel for the Individual Defendants--six months after the lawsuit was filed. And it was provided to Thompson without meaningful opportunity to investigate the circumstances in which it was created.

The City also continued to withhold *all* communications between the Mayor, the Secretary, Cantrell, Arbuthnot, and Templer, despite Thompson's request for same, which further undermined Thompson's ability to amend her complaint. ROA.1095-99. On appeal, the City argues Thompson's allegations about the Mayor's unconstitutional directive is "conclusory" with knowledge that it has failed to produce the relevant communications. This Court should make clear that *Carswell* does not prevent discovery of *public information* in the possession of governmental entities and that district courts retain discretion to order them to respond to written discovery and to compel disclosure, even if a motion to dismiss is pending because the City is not entitled to qualified immunity.

## VII.   Appellees' objections and waiver arguments should be overruled and rejected.

In her opening brief Thompson cited to information that was publicly available on the City's website. *See* Thompson Brief fns.1-5, 7,

10. Since that filing, the City upgraded its website.[5] In doing so, it removed from public view all the public information on which Thompson's brief relied, including all of the 2022 agenda and minutes notices.[6] The City now objects to Thompson referencing those public documents that were previously publicly available because they are not in the record. City Brief p.2. However, because the City is responsible for making that public information unavailable and does not otherwise dispute the accuracy of those factual references, the Court should treat them as admitted.

The individual defendants also argue that Thompson waived reliance on two false statements contained within Arbuthnot's probable cause affidavit because she allegedly did not rely on them in the district court: (1) Arbuthnot's insertion of the word "original" when he described the document the secretary told him Thompson altered; and (2) that Thompson's mere editing of her copy "could have misinformed

---

[5] *See* https://www.godleytx.gov/

[6] *See* https://tx-godley.civicplus.com/1210/2847/Agendas-and-Minutes (search for 2022 agendas and minutes indicates "no events found").

citizens/city council members." Ind. Brief p.11. As to the first materially false statement, the individual defendants are mistaken. *See* ROA.1007 (first bullet point), 1035 (last bullet point).

As to the second materially false statement, Thompson's argument goes to the general allegation raised in her district court briefing that no reasonable officer could have believed she committed a crime because the evidence in the police's possession negated the *mens rea* of the alleged offense. ROA.1035. For example, the complaint alleged that official agendas must be physically posted at City Hall to be effective, (ROA.819[¶19], 833 [¶72].), City Council, including the Mayor, was aware the edited copy would not govern the December 27 meeting because it was *not* posted at City Hall, (ROA.837 [¶82].), City Council could have explained to the public at the December 27 meeting that Papenfuss mistakenly published the edited copy and thereby clear up any confusion, (ROA.837[¶83].), and police lacked evidence showing Thompson edited her copy with intent to *deceive* anyone and had evidence showing her innocence. ROA.837 [¶85], 838-39[¶89-90], 1005-06, 1033-34. Indeed, Thompson herself disclosed to the Mayor, City Attorney,

Secretary and Papenfuss that she had corrected the agenda and had directed the Secretary to post it at City Hall. ROA.832 [¶69,71], 834 [¶73-74]. Thompson simultaneously shared her corrected copy with Papenfuss in a *private* email she sent to the Secretary, which contained *no* direction to Papenfuss to publish it. ROA. 832-33 [¶69-71]. These allegations support the plausible inference that Thompson's *editing* of her copy had no *legal effect* on the topics that would be discussed at the meeting, and therefore she had no possible motive for intentionally "causing" an *unposted* corrected copy to be published on *Facebook.*

Moreover, even if these arguments are viewed as new, which Thompson denies, the factual allegations on which they are based are not, and they are supported by the record evidence. Therefore, if the Court finds to the contrary, these arguments certainly show why remand to allow an opportunity to amend is not futile. *See Hughes v. Garcia*, 100 F.4th 611, 620 (5th Cir. 2024) ("At the motion to dismiss stage, plaintiffs need only 'point out specifically the portion of the warrant affidavit that is claimed to be false ... accompanied by a statement of supporting reasons.'"). "[S]pecific examples of misstatements and omissions—

combined with inferential explanation as to their materiality—can carry a complaint across the Rule 12(b)(6) line." *Id.*

## CONCLUSION

The Court should reverse the district court's judgment and remand with instructions to permit discovery to proceed. Alternatively, if the Court finds the complaint insufficient, remand with instructions to permit Thompson to conform her complaint with the evidence through amendment. Thompson also seeks all other relief to which she is entitled.

Respectfully submitted,

_/s/ Ann "Ana" Marie Jordan_
Ann "Ana" Marie Jordan
Texas Bar No. 00790748
ajordan@carterarnett.com
Linda R. Stahl
Texas Bar No. 00798525
lstahl@carterarnett.com
**CARTER ARNETT PLLC**
8150 N. Central Expressway Suite500
Dallas, Texas 75206
Tel: 214-550-8188
Fax: 214-550-8185

**ATTORNEYS FOR APPELLANT
JENNIFER THOMPSON**

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25(d) and Fifth Circuit Rule 25.2, I hereby certify that on September 22, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit, using the electronic filing system of the Court. I further certify that I have complied with the privacy and redaction requirements of Federal Rule of Appellate Procedure 25(a)(5) and Fifth Circuit Rule 25.2.13; that the electronic submission is an exact copy of the paper document; and that the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Additionally, on September 22, 2025, a true and correct copy of the foregoing document was served via ECF electronic notice through the Court's Notice of Docket Activity upon counsel for the City of Godley, Christopher D. Livingston, and counsel for the Individual Defendants, Christoher A. Klement who have consented in writing to accept such notice as service of this document by electronic means.

/s/*Ann "Ana" Marie Jordan*
Attorney for Jennifer Thompson

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

Certificate of Compliance with Clerk Order on Type-Volume Limitation
Certificate of Compliance Typeface requirements and Type Style
Requirements

1.      This brief complies with the type volume limitation imposed by Fed. R. App. P. 32(a) (7)(B)(ii) because:

> this brief contains 6495 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO in 14-point Century Schoolbook.

/s/*Ann "Ana" Marie Jordan*
Attorney for Jennifer Thompson

Dated:  September 22, 2025

40